[Cite as *State v. Kent*, 2024-Ohio-4851.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

STEVEN E. KENT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0104**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CR 00189

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.
Stay of Execution Terminated.

---

*Atty. Dave Yost*, Ohio Attorney General and *Atty. Andrea K. Boyd*, Assistant Attorney General, for Plaintiff-Appellee

*Atty. John B. Juhasz*, for Defendant-Appellant

Dated: September 16, 2024

**WAITE, J.**

{¶1} Appellant Steven E. Kent appeals his conviction and sentence on one count of tampering with evidence. Appellant argues that the jury conviction was based on insufficient evidence on all the material elements of the crime. The charge arose after Appellant, who was a police officer and school resource officer at Poland High School, was accused of sexually assaulting a student. The same day that the abuse was being reported to high school officials, he erased all information from his cell phone. He was later charged with sexual battery and tampering with evidence. The record shows that Appellant sent the victim's cell phone many texts, images, and videos from his cell phone. The data on Appellant's phone would have been valuable as evidence against him regarding the assault charges. The timing of the erasure of evidence, as well as his knowledge as a police officer that an investigation was likely to start, support the jury verdict for tampering with evidence.

{¶2} Appellant also argues that his one-year prison sentence was disproportionate. Appellant did not provide the sentencing transcript for this appeal. Therefore, we must presume the regularity of the trial court sentencing proceedings regarding this issue. Additionally, the one-year sentence was well within the 9-to-36-month range of prison sentences for a third degree felony, and the court's sentencing entry stated that the court complied with the requirements of R.C. 2929.11 and 2929.12 in sentencing Appellant. Appellant's arguments are not persuasive and are not supported by the record. His two assignments of error are overruled, and his conviction and sentence are affirmed.

Facts and Procedural History

{¶3}   On April 7, 2022, Appellant was indicted on three counts of sexual battery pursuant to R.C. 2907.03(A)(1), third degree felonies; and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third degree felony.  The charges arose out of Appellant's relationship with a minor student at Poland Seminary High School (aka Poland High School) in Mahoning County.  At the time, Appellant was 54 years old and a police officer, working at the school as a school resource officer.  He exchanged many messages and photos with the child, including nude photos.  (Tr., pp. 60, 138.)  He eventually forced her to have oral sex with him.  (Tr., pp. 60, 132.)  An investigation took place after an extra-marital girlfriend of Appellant, who knew and was in contact with the victim, reported the abuse to the high school principal.  The principal then contacted the police.  The same day that the crime was reported, Appellant performed a reset of his cell phone, permanently and irretrievably deleting all the data.

{¶4}   The case went to jury trial on August 7, 2023.  The state called seven witnesses.  The witnesses included the victim, Appellant's extra-marital girlfriend Carla Bobbey, a social worker who interviewed the victim, two special agents and an analyst from the Ohio Bureau of Criminal Investigation (BCI), and Chief of Police Greg Wilson from the Poland Township Police Department.  Appellant called one witness (his daughter), and personally testified.

{¶5}   In 2020, Appellant was the school resource officer at Poland High School. He became a police officer in 2002 and worked as an officer in Poland Township starting in 2009.  He received additional training in 2013 to become a school resource officer, taking that position for Poland schools in 2014.  He was responsible for students from

kindergarten through twelfth grade. A school resource officer acts as both a police officer and a liaison between the police department and the school. The duties of the school resource officer were to function as a police officer to protect the students and teachers from violence, act as a counselor, and to engage in educational activities such as health class, drug awareness, and "stranger danger." (Tr., p. 531.) While Appellant was employed by the school, he continued as a Poland Township police officer. He remained in this dual capacity of police officer and school resource officer throughout the time of his relationship with the victim.

{¶6} Appellant began speaking to the victim, C.C., one-on-one starting in 2019. She was in the tenth grade. She had been aware of him for a number of years as the school resource officer but did not speak to him until he approached her in 2019. Both C.C. and Appellant had recently experienced the loss of close family members, and he ostensibly wanted C.C. to speak to his own teenage daughter about her grief issues. Appellant and C.C. began contacting each other at the high school, but in early 2020 they began meeting outside of school. They also communicated extensively by text message, Snapchat, and Instagram. When Appellant began making comments about her body, C.C. was afraid to challenge him about this behavior. Appellant then began sending nude photos of himself, including pictures of his penis. C.C. also began sharing with him intimate photos of herself. They each exchanged approximately 50 photos.

{¶7} Sometime during C.C.'s sophomore year, a friend of hers saw Appellant's name in C.C.'s phone contact list. The friend told her mother about it, who then made C.C. call Appellant and tell him they must stop communicating with each other. While communications did appear to briefly stop, this did not last long. Appellant began asking

C.C. to meet him away from school at places in the community while he was on duty as a Poland Township Police Officer. During these encounters, Appellant would touch C.C.'s body, while in police uniform.

{¶8} In C.C.'s junior year they began meeting during both Appellant's on-and off-duty time. The first time they kissed was in Appellant's truck. He informed her he had a gun in the truck at the time, which she found intimidating.

{¶9} By early 2021, they were meeting outside of school several times per week and the relationship became more physical. Appellant "made it clear what he wanted, and [C.C.] felt threatened to agree." (Tr., pp. 132-133.) C.C. performed oral sex on Appellant three times during this period. Appellant told C.C. not to save any communications on her phone, because other police officers were becoming suspicious. He was also constantly on guard that no one see them together in public.

{¶10} During this same time, Carla Bobbey and Appellant were having an extramarital affair. In May of 2021, Bobbey and Appellant attended a Cleveland Indians baseball game, and a photo of the two of them together was posted on Snapchat. The photo eventually circulated to both Bobbey's and Appellant's families, as well as to C.C.

{¶11} Bobbey was the mother of one of C.C.'s friends. On June 1, 2021, Bobbey found out from C.C. that Appellant and C.C. were communicating with each other. The next day Bobbey told Appellant to stop contacting C.C., or she would tell his wife and C.C.'s father about the relationship. C.C. was 17 years old at this time.

{¶12} On the evening of June 5, 2021, Bobbey texted C.C. to meet and discuss Bobbey's recent conversation with Appellant. They met for over an hour. C.C. told Bobbey that she was in a sexual relationship with Appellant and that she had performed

oral sex on him multiple times. This was the first time Bobbey had heard about the sexual aspects of their relationship. Bobbey told C.C. that they had to tell someone about the relationship, because it was wrong and was not normal. That evening Bobbey called Appellant via FaceTime, which provides both audio and video communication. She told Appellant that she was going to report what C.C. had told her to both C.C.'s father and to the school. (Tr., p. 265.) Appellant volunteered to quit his job and leave the community. Bobbey responded, "that's not how this is gonna go, because my fear was this would happen somewhere else." (Tr., p. 265.)

{¶13} On the morning of June 6, 2021, Bobbey had a face-to-face meeting with the principal of Poland High School, Kevin Snyder. Snyder and Bobbey then contacted C.C. and her father and asked them to come to the school immediately for an important discussion. They did meet at the school to discuss the relationship between Appellant and C.C., and during this meeting the principal specifically stated that he intended to contact the local police. Snyder did contact Police Chief Greg Wilson of the Poland Township Police Department on June 6, 2021. A formal investigation began on June 7, 2021. Various staff from Ohio BCI became involved. One important part of the investigation was collection and examination of digital sources of information, such as cell phones, laptops, and tablets. During the investigation, Appellant's cell phone was taken as evidence. An examination of the phone revealed that a factory reset had been performed on the phone at 12:54 p.m. on June 6, 2021. Appellant admitted at trial that he had done the factory reset, himself, on June 6, 2021.

{¶14} The evidence at trial showed that Appellant had experience with conducting investigations, including sexual assault investigations, and that he knew the law concerning sexual battery and tampering with evidence.

{¶15} On August 14, 2023, the jury returned a verdict of not guilty as to the three counts of sexual battery, but convicted Appellant of tampering with evidence. Appellant was sentenced on September 20, 2023. The court imposed a one-year prison term and the sentencing entry was filed on September 22, 2023. The notice of appeal was filed on September 28, 2023. Appellant filed a motion for stay of execution of sentence, which was granted by this Court on October 3, 2023. Appellant raises two assignments of error on appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN FAILING TO DISMISS COUNT 4, AND IN SENTENCING THE APPELLANT THEREON.

{¶16} Appellant contends that his conviction for tampering with evidence was based on insufficient evidence of guilt. Appellant claims that this crime could only have been proven if it was shown that an official investigation was in progress or was about to be initiated, and that he knew about this investigation. Based on Appellant's reading of the record, at the time he reset the phone there was no imminent investigation, so the crime of tampering with evidence could not have been committed. Even if an investigation was about to commence on, or about, the time he erased his phone, he claims there is no evidence he knew anything about such an investigation. He contends the state did not connect the erasure of the phone's data to any criminal purpose or activity at the time

<u>Case No. 23 MA 0104</u>

the phone was erased. Therefore, he concludes that there was insufficient evidence to convict him of the crime.

**{¶17}** "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 2010-Ohio-617, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 2009-Ohio-1023, ¶ 14 (7th Dist.); *Thompkins* at 386. When reviewing a conviction for sufficiency of the evidence, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 2015-Ohio-1882, ¶ 14 (7th Dist.), citing *State v. Merritt*, 2011-Ohio-1468, ¶ 34 (7th Dist.).

**{¶18}** In reviewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). A conviction cannot be reversed on sufficiency grounds unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*

**{¶19}** Appellant was convicted of tampering with evidence as found in R.C. 2921.12(A)(1):

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

**{¶20}** There are three elements to tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 2014-Ohio-2139, ¶ 11.

**{¶21}** "Knowledge of a likely investigation may be inferred when the defendant commits a crime that is likely to be reported . . . ." *State v. Thompson*, 2023-Ohio-2942, ¶ 34; *State v. Martin*, 2017-Ohio-7556, ¶ 118. Knowledge that a criminal investigation is imminent is based upon a reasonable person standard. *State v. Workman*, 2015-Ohio-5049, ¶ 51 (3d Dist.).

**{¶22}** Appellant argues that most of the communications between himself and C.C. were by means of Snapchat, and that Snapchat communications are destroyed automatically by the Snapchat software. He contends that the erasure and reset of his phone had nothing to do with the deletion of his Snapchat messages. In other words, there was no purposeful act involved in deleting the Snapchat messages because he assumed they had already been deleted. C.C. testified, though, that Snapchat communications can be automatically deleted or can be saved, so his argument is not fully supported by the record. Appellant appears to concede that even if most of the evidence of communication between him and C.C. would have disappeared automatically, not all of it would automatically delete. Appellant essentially concedes that

not all communications or evidence would have been automatically destroyed if not for his actions.

**{¶23}** The testimony as to whether Snapchat communications are automatically deleted was largely anecdotal and was not expert testimony. The state's BCI expert Erica Moore, on the other hand, testified that she used special software to extract all the data from Appellant's phone. She extracted a calendar, call log, chats, contacts, emails, instant messages, notes, searched items, voice mails, web history, and all audio, image, and video files. She also found a dot obliterated file that indicated when a factory reset was performed on the phone. The date was June 6, 2021. She testified that when a phone is reset all data is erased. Therefore, the only data on the phone of calls, emails, messages, searches, web history, and media files was from June 6, 2021 and forward. No data could be recovered, from Snapchat or otherwise, before June 6, 2021, because Appellant erased it.

**{¶24}** Even if only one piece of evidence might have remained on his phone relating to the sexual battery charges prior to his reset, that evidence would have impacted trial in this matter. Any evidence from Instagram or text messages would not have been automatically deleted. There were many photographs introduced at trial based on C.C.'s text and Instagram records. C.C. testified that Appellant sent her nude photos of him from his cell phone. Although C.C. deleted the sexually explicit photos, Appellant's phone data may have corroborated C.C.'s testimony about the photos. Therefore, the record refutes Appellant's contention that his act of erasing the phone could not have involved a purposeful decision to destroy evidence relating to crimes he committed against C.C.

Case No. 23 MA 0104

**{¶25}** Appellant aims the bulk of his argument attempting to show there was no official investigation of the matter until June 8, 2021, two days after he erased his phone. The record reflects that the police department was contacted on June 7, 2021 and that an investigation into the allegations began that day. He argues that he could not have known about an active investigation on the day he erased his phone, June 6, 2021, because no investigation was taking place that day. He discounts the testimony of his ex-paramour Carla Bobbey because, according to Appellant, she threatened only to tell C.C.'s father and Appellant's wife, and not police officials. The record reveals Appellant is mistaken. He also argues that her threat to tell people about his relationship with C.C. was conditioned on whether he stopped seeing C.C. The record shows that this condition was his suggestion, not Bobbey's. Finally, he argues that there was no evidence Bobbey had actually told anyone about his relationship with C.C. at the time he erased his phone. The record shows that she told the school principal on June 6, 2021 (the same day Appellant erased the phone), and then Bobbey attended a meeting with C.C., her father, and the school principal so that C.C. could reveal the details of the relationship, including her allegations of oral sex. (Tr., pp. 266-270.)

**{¶26}** Even if Bobbey had not disclosed to anyone C.C.'s sexual abuse on or before June 6, 2021, the fact that she had knowledge of Appellant's sexual relationship with the child, knew who to contact to report the improper sexual relationship, and specifically told Appellant she was going to report it, was enough to establish that an investigation was likely to take place. In addition, there was evidence that more and more people were suspicious of the relationship, including fellow police officers. Even without

Bobbey's testimony, the jury could infer that an investigation was inevitable and that Appellant knew he would soon be questioned.

**{¶27}** Whether or not Bobbey told authorities about the relationship on or before June 6, 2021 is not crucial in this case. The issue is whether her statement to Appellant on June 5, 2021, that she intended to report Appellant's unlawful relationship to authorities would have led a reasonable person to believe that an investigation was likely to begin imminently. Based on Appellant's knowledge as a police officer and school resource officer, or simply using the knowledge of a 54-year old man being told that his ex-girlfriend was going to report to a school official that he was having an affair with a 17-year old high school student, a jury could infer that Appellant knew an investigation was very likely imminent.

**{¶28}** It is not mere speculation to assume Appellant knew an investigation would begin immediately after the school principal was told. Appellant had experience with these types of investigations. (Tr. p. 454.) He knew what would take place if allegations of sexual abuse were disclosed. (Tr., p. 560.) He was required to know the law surrounding sexual battery and tampering with evidence. (Tr., p. 561.) Thus, Appellant cannot claim he had no idea an investigation would take place soon after Bobbey told the school principal about his relationship with C.C.

**{¶29}** Appellant relies primarily on two cases to argue that there was insufficient evidence to support his conviction for tampering with evidence. In *State v. Straley*, 2014-Ohio-2139, the court found insufficient evidence of tampering when Amanda Straley threw away a baggie filled with cocaine after she was stopped for a minor traffic violation. The baggie was only found after Straley was taken to the police station and then

demanded she be allowed to urgently run outside to urinate. An officer found the baggie on the ground in the spot where she had urinated. Because Straley was not being investigated for any drug crime, or even for public urination, the court held there was no ongoing or likely investigation that could possibly have been related to the disposal of the baggie of cocaine.

**{¶30}** *Straley* is not particularly relevant to this appeal. Here, ample evidence supports that an investigation was being initiated into Appellant's unlawful relationship with a minor and that Appellant was told about it directly by the person who reported the crime. As a police officer, as well as being the school resource officer, Appellant was well aware of the consequences that follow when a student reports a sexual crime to the principal of the school, particularly when it involves a school employee. He knew or should have known an investigation would have begun regarding these allegations immediately, which coincided with his reset of his phone the next day. Unlike *Straley*, Appellant knew there would be an investigation into these specific allegations in this appeal.

**{¶31}** The situation in *State v. Barry*, 2015-Ohio-5449 is similar to that in *Straley*. The accused was caught having inserted a condom filled with heroin into her vagina. The circumstances of her arrest, however, again started with a traffic stop. A friend of Appellant had asked her to hide the heroin and promised to give her part of the proceeds when the heroin was sold. Appellant and three others were pulled over for violating minor traffic laws. Marijuana was found in the car during the stop. During the investigation of the traffic stop and the discovery of marijuana, an officer suspected Barry had concealed heroin inside a body cavity. She admitted it and removed the condom in the presence of

a female officer. She was charged with trafficking and possession of heroin and with tampering with evidence.

**{¶32}** The question in *Barry* was "[w]hether a person who hides evidence of a crime that is unmistakable to him or her commits tampering with evidence in the absence of evidence that a victim or the public would report a crime?" *Barry* at ¶ 1. The court held that no, there was no evidence of tampering absent evidence that a victim or the public would surely report the crime. "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense[.]" *Id.* at ¶ 2. "In this case, there is no evidence that at the time she concealed the heroin in her body in Middletown, Ohio, Barry knew or could have known that a state trooper would stop her car in Scioto County and begin an investigation of her for drug trafficking and drug possession." *Id.* at ¶ 3.

**{¶33}** Just two years later the Ohio Supreme Court implicitly reversed, or at least severely limited, *Barry*. *State v. Martin*, 2017-Ohio-7556. *Martin* involved tampering with evidence in a case involving a shooting and murder. Along with the murder, David Martin was charged with tampering after he burned the clothes he wore during the shooting. Fully aware of its recent *Barry* holding, the *Martin* Court nevertheless concluded: "*Barry* does not foreclose the possibility that knowledge of a likely investigation may be inferred when the defendant commits a crime that is likely to be reported." *Id.* at ¶ 118. In other words, whether a court can impute constructive knowledge of an impending investigation solely based on the commission of the crime depends on the facts of the case. When a homicide is involved, an investigation is almost certainly going to occur, and any destruction of evidence may lead to a tampering charge.

Case No. 23 MA 0104

{¶34} Here, the state did not rely on the mere commission of the crime to impute knowledge to Appellant that an imminent investigation would occur. The state relied on Appellant's training as a police officer and school resource officer, testimony that other police officers were suspicious of his relationship with C.C., the fact that Appellant was showing concern that others would learn about the relationship, the fact that C.C. told others about the sexual assaults, and Bobbey's statements that she was going to tell the school principal about Appellant's sexual relationship with C.C. in order to prove such knowledge. Bobbey met with Appellant on June 5, 2021 and told him directly that she intended to report his conduct to the school. (Tr., pp. 264-265.) Appellant performed a factory reset on his phone the next day, wiping out all data and preventing investigators from reconstructing that data. Bobbey did in fact tell the principal on June 6, 2021 about Appellant's sexual relationship with C.C. Principal Snyder reported the crime to Chief Wilson. The investigation began the next day.

{¶35} The record contains sufficient evidence to establish the elements of tampering with evidence, and Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO ONE YEAR IN PRISON, AS SUCH A SENTENCE WAS DISPROPORTIONATE.

{¶36} Appellant contends that his one-year prison sentence is disproportionate to other sentences for tampering with evidence. Appellant argues he had no prior criminal record, the crime was a low-level non-violent felony, there was no harm to the victim, and

that the felony sentencing law encourages the use of non-prison sentences for low-level felony crimes, such as tampering with evidence.

**{¶37}** It appears that Appellant did not raise the issue of disproportionate sentencing to the trial court, and therefore, the matter is waived. "Appellant waived his disproportionate sentencing argument because he failed to raise it before the trial court." *State v. Tylke*, 2022-Ohio-2010, ¶ 59 (7th Dist.). "[A]ppellant failed to raise this issue before the trial court and has therefore waived all but plain error." *State v. Ahmed*, 2004-Ohio-4190, ¶ 55. In addition, Appellant did not provide a sentencing transcript on appeal, and relies solely on caselaw in making this argument. Without a sentencing transcript, we cannot determine whether Appellant objected to the length of his sentence on the ground that it was disproportionate. When a transcript is necessary to resolve the matter raised on appeal, and no transcript is provided, a reviewing court will presume the regularity of the trial court proceedings and affirm the judgment. "It is appellant's responsibility to provide the court with a record of the facts, testimony, and evidence in support of her assignments of error." *State v. Bugaj*, 2007-Ohio-964, ¶ 11 (7th Dist.). "Absent a complete transcript of proceedings, we must presume the regularity of the proceedings." *State v. James*, 2016-Ohio-4662, ¶ 10 (7th Dist.), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

**{¶38}** Even if Appellant had provided an appropriate transcript, there is otherwise no basis in the record to challenge the sentence. "An appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum*, 2016-Ohio-1002, ¶ 25. "Clear and convincing evidence

is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶39}** When determining whether a prison sentence is appropriate for a third-degree felony, the sentence must be within the range provided for that sentence and must comply with the purposes and principles of sentencing found in R.C. 2929.11 and 2929.12. *See* R.C. 2929.13(C). The trial court is not required to state its reasons or make findings with respect to R.C. 2929.11 and 2929.12, but is only required to carefully consider the factors. *State v. Mathis*, 2006-Ohio-855, ¶ 38.

**{¶40}** The one-year sentence is well within the 9-to-36 month range for third degree felonies. Appellant's real complaint is that he believes he should have received the minimum sentence because he is a first-time offender. The trial court could have relied on many factors in sentencing Appellant more than the minimum, including the overall circumstances of this crime, involving a person in authority (who was also a police officer) at the victim's high school initiating a sexual relationship with the victim and then destroying evidence of that crime. We must keep in mind "that a sentencing court may consider facts introduced at trial relating to other charges, even if the defendant has been acquitted of those charges." *State v. Hudson*, 2017-Ohio-645, ¶ 41. Without a transcript to establish that error occurred, we presume that the trial court did, in fact, carefully consider all the relevant factors when imposing the one-year sentence.

**{¶41}** Appellant's second assignment of is overruled.

Conclusion

{¶42} Appellant argues that the state did not sufficiently prove the three elements necessary to convict him of the crime of tampering with evidence. We disagree. The state established the value of the potential evidence on Appellant's cell phone and that he erased his phone the day after he was told his crime would be reported to school authorities. Appellant also objects to the length of his sentence. Appellant did not provide a sentencing transcript and it appears he did not raise this issue with the trial court. Appellant received a one-year sentence, which is well within the 9-to-36 month range for third degree felonies. Appellant's argument that his sentence is disproportionate is not supported by any part of the record. Appellant's two assignments of error are overruled and the judgment of the trial court is affirmed. The stay of execution of sentence that was granted for this appeal is hereby terminated.

Hanni, J. concurs; see concurring opinion

Dickey, J. concurs.

Hanni, J., concurring opinion.

{¶43} I respectfully concur with my colleagues and the majority opinion. I write separately only to emphasize that Appellant's experience as a police officer, and even more specifically as a school resource officer, makes his argument that he could not have been aware that an investigation was likely to ensue not credible. It is undisputed that Appellant reset his cellphone after Bobbey told him she knew about his relationship with C.C. and she was going to report it. Armed with this information, Appellant reset his phone. These facts alone constitute sufficient evidence of tampering with evidence.

————————————————

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. The stay of execution of sentence that was granted for this appeal is hereby terminated. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**